IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>　　　　　Petitioner,<br>　v.<br><br>Accrediting Council for Independent Colleges and Schools,<br><br>　　　　　Respondent. | Case No. 15-cv-1838-RJL |

**REPLY IN SUPPORT OF PETITION
TO ENFORCE CIVIL INVESTIGATIVE DEMAND**

ACICS goes to great lengths to avoid having to respond to the Bureau's CID. It recounts its history, extensively describes the accreditation process, and suggests that its status as an accreditor recognized by the Department of Education somehow bears on its obligation to provide information in response to a CID from a separate federal-government agency. But none of that matters, at least under the deferential law that governs an agency's issuance of administrative subpoenas.

What matters under the law is that the agency's authority is not plainly lacking and that it seeks relevant information. Here, that standard is easily met. The Bureau has authority to investigate for-profit schools in relation to their lending and financial-advisory services. And ACICS, as an accreditor of for-profit schools, cannot seriously dispute that the information the Bureau has requested would be relevant to an investigation relating to for-profit schools and their accreditation.

The Court should therefore grant the Bureau's petition and enforce the CID.

1

## ARGUMENT

### I. The standard for enforcing CIDs is deferential.

As an initial matter, ACICS elides the standard applicable in the Court's analysis[1]—perhaps understandably, as that standard alone is fatal to its arguments under the circumstances. As the Bureau explained in its Memorandum, the Court's "role in a proceeding to enforce an administrative subpoena is a strictly limited one."[2] The Court must only determine "that the agency is authorized to make such an inquiry, that the information sought is reasonably relevant, and the demand is not too indefinite."[3] "The [C]ourt must not lose sight of the fact that the agency is merely exercising its legitimate right to determine the facts, and that a complaint may not, and need not, ever issue."[4]

The courts have held that "agencies should remain free to determine, in the first instance, the scope of their own jurisdiction, and enforcement should be denied only when there is a 'patent' lack of jurisdiction in an agency to regulate or investigate."[5] With respect to relevancy, a court must defer to the agency's appraisal, which "must be accepted so long as it is not obviously wrong."[6] In sum, "[w]hile the court's function is 'neither minor nor ministerial,' the scope of issues which may be litigated in [a CID] enforcement proceeding

---

[1] *See, e.g.*, Opposition to Petition to Enforce CID ("Opp.") at 7-8 (noting that courts afford agencies deference in "handling of their investigations and in the propounding of CIDs," but omitting mention of deference in determining scope of agency authority).
[2] *See FTC v. Texaco*, 555 F.2d 862, 871-72 (D.C. Cir. 1977).
[3] *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).
[4] *Texaco,* 555 F.2d at 874.
[5] *Id.*
[6] *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (internal quotation marks and citations omitted); *id.* at 1090 ("The standard for judging relevancy in an investigatory proceeding is more relaxed than in an adjudicatory one.... The requested material, therefore, need only be relevant to the investigation—the boundary of which may be defined quite generally.") (emphasis in original; internal citations omitted).

must be narrow, because of the important government interest in the expeditious investigation of possible unlawful activity."[7]

## II.     The CID is within the scope of the Bureau's authority.

The bulk of ACICS's argument concerns the Bureau's authority to issue the CID. ACICS asserts that "none of the consumer financial laws [that the Bureau enforces] address or implicate – even taking the most expansive view of those laws – the accrediting process of for profit colleges."[8] ACICS makes several specific arguments in support of this asserted lack of authority: that it "does not provide any consumer financial products or services"; that it is not an "affiliate" of a covered person; that it is not a "service provider" to a covered person; and that it does not provide "substantial assistance" to a covered person.[9] But all of these arguments about the Bureau's potential authority to bring an enforcement action against ACICS are misplaced.

As described above, an action to enforce an administrative subpoena "is not the proper forum in which to litigate disagreements over an agency's authority to pursue an investigation."[10] The Supreme Court has held that, as a general matter, agencies must be free to determine their own jurisdiction when issuing compulsory process.[11] Appellate courts consistently have deferred to agency determinations of their own investigative authority, and generally have refused to consider challenges to agency authority in proceedings to enforce

---

[7] *Texaco*, 555 F.2d at 872 (internal citations omitted).
[8] Opp. at 10.
[9] *Id.* at 11-15.
[10] *FTC v. Ken Roberts Co.*, 276 F.3d 583, 584 (D.C. Cir. 2001).
[11] *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 508-09 (1943).

compulsory process.[12] Rather, the recipient should raise its challenge to an agency's authority if and when a suit is filed.[13]

Even if it were appropriate to analyze the scope of the Bureau's authority at this preliminary stage—and it is not—ACICS ignores or rejects plausible bases for the Bureau's authority based on nothing more than its own generalized factual assertions. As noted in the Bureau's Memorandum, the Bureau is empowered under § 1031 of the CFPA to prevent "unfair, deceptive, or abusive act[s] or practice[s] . . . in connection with any transaction with a consumer for a consumer financial product or service."[14] Further, § 1036 of the CFPA prohibits certain persons from committing "unfair, deceptive, or abusive" acts or practices, and any person from "knowingly or recklessly provid[ing] substantial assistance to" an entity engaged in such acts or practices.[15]

Thus, and as ACICS acknowledges, the Bureau regulates consumer-financial products and services, such as private loans to students, or other services, provided by for-profit schools. So while ACICS dwells on the proposition that it does not directly provide consumer-financial products or services to consumers, it cannot dispute the Bureau's authority to investigate or take enforcement action with respect to the for-profit schools that ACICS accredits,[16] and it does not explain why the Bureau could not take action against a

---

[12] *Ken Roberts Co.*, 276 F.3d at 586 (noting the "long-standing doctrine that precludes courts from entertaining challenges to the jurisdiction of administrative agencies during subpoena enforcement proceedings" and collecting cases).
[13] *E.g.*, *Construction Prods. Research, Inc.*, 73 F.3d at 470-71.
[14] 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).
[15] 12 U.S.C. § 5536(a).
[16] *See, e.g.*, *CFPB v. ITT Educ. Servs., Inc.*, No. 1:14-cv-00292-SEB-TAB, 2015 WL 1013508, *22-24 (S.D. Ind. Mar. 6, 2015) (holding for-profit school to be both "covered person" and "service provider" under CFPA); *CFPB v. Corinthian Colleges, Inc.*, Case No. 1:14-cv-07194,

for-profit college that has engaged in unfair, deceptive, or abusive acts or practices related to its accreditation.

Similarly, ACICS asserts that it does not "touch" any transaction that involves a consumer-financial product or service, but does not dispute that it evaluates "all aspects" of the for-profit colleges it accredits.[17] Indeed, ACICS is required by law to collect and evaluate this exact information.[18] A government agency such as the Bureau is not obligated to accept at face value ACICS's generalized description of its interactions with the schools it accredits, or what aspects of those schools' activities it "touches"; rather, it has authority to investigate to gather facts and determine whether the law is being violated.

Finally, ACICS asserts that it "does not offer *any* assistance in the area of student finance to its accredited institutions, let alone *substantial* assistance."[19] Again, such a bare assertion cannot support refusing to enforce the CID. Indeed, the very structure of ACICS's argument demonstrates that it is inapposite at this stage: it argues that it has no involvement in any financial arrangement between the institutions it accredits and students;[20] that the Bureau would be obligated to demonstrate a financial incentive to assist for-profit schools in illegal practices to show substantial assistance, and would be unable to do so because ACICS

---

Doc. No. 58 (Default Judgment and Order) ¶ 14 (N.D. Ill. Oct. 27, 2015) (holding for-profit school to be "covered person" under CFPA).
[17] Decl. of Albert C. Gray (Doc. 4-1) ¶ 11.
[18] *See, e.g.*, 34 C.F.R. § 602.15 (requiring accreditors to "maintain complete and accurate records of . . . [their] last full accreditation . . . of each institution or program, including on-site evaluation team reports, the institution's or program's responses to on-site reports, periodic review reports, and any reports or special reviews conducted by the agency between regular reviews"); § 602.16 (requiring accreditors to evaluate "the quality of the institution or program" with respect to student achievement, including job-placement rates; student-support services; and recruiting and admissions practices, including advertising).
[19] Opp. at 14 (emphasis added).
[20] *Id.*

is a non-profit organization;[21] that there was no motive for any person involved in the accreditation process to have sought to assist any illegal practice by an accredited institution;[22] and that nothing ACICS did could possibly have an illegal act as a direct or foreseeable result.[23] Leaving aside the dubious nature of several of ACICS's contentions—for example, the proposition that a non-profit organization can never substantially assist a legal violation by another because it does not have a financial incentive to do so—the larger problem with ACICS's arguments is that they presume facts and circumstances the Bureau has not had an opportunity to investigate or assess for itself. The Court should reject these fact-based arguments because at "the pre-complaint stage, [the Bureau] is under no obligation to propound a narrowly-focused theory of a possible future case."[24]

### III.  The CID seeks reasonably relevant information.

ACICS does not raise a separate challenge to the relevance of the information sought by the CID. It simply argues that because the CID is beyond the scope of the Bureau's authority, the information sought cannot be relevant. Because ACICS's arguments with respect to the Bureau's authority fail, so too does its argument with respect to relevance.[25]

### IV.  The CID is not "unduly burdensome."

ACICS does not argue that the scope of the information requested by the Bureau is unduly burdensome or that the time or effort needed to produce such information

---

[21] *Id.*
[22] *Id.* at 14-15.
[23] *Id.* at 15.
[24] *Texaco*, 555 F.2d at 874.
[25] *CFTC v. Ekasala*, 62 F. Supp. 3d 88, 93 (D.D.C. 2014) (noting the "broad deference afforded" to agencies "both in their interpretation of the scope of their authority to issue a [CID] for targeted records and their estimation of the relevance of such records" and that it is essentially a subpoena recipient's "burden to show that the information is irrelevant").

6

"threatens to unduly disrupt or seriously hinder normal operations of [ACICS]."[26] Indeed, because the scope of the CID is narrowly confined to two interrogatories and the testimony of a corporate representative over two days in Washington, D.C., where ACICS is located, it cannot make such a showing. Instead, ACICS argues that the CID is unduly burdensome because it seeks the identities of volunteers who participate in the accreditation evaluation process, and that revealing their identities to the Bureau may cause those evaluators to become less inclined to participate in future evaluations.[27] But a similar argument "could be made with respect to almost any investigation,"[28] and does not under the law warrant excusing ACICS from compliance with the CID.

## CONCLUSION

The Court should grant the Bureau's petition and order ACICS to comply with the CID within 10 days, or at such later date as may be established by the Bureau.

Dated:  December 11, 2015

Respectfully submitted,

ANTHONY ALEXIS
Enforcement Director

JEFFREY PAUL EHRLICH
Deputy Enforcement Director

JOHN WELLS
Assistant Litigation Deputy

s/Benjamin Konop
BENJAMIN KONOP
KRISTINA BETTS
Enforcement Attorneys

---

[26] *Texaco*, 555 F.2d at 882.
[27] *See* Opp. at 16-17.
[28] *Invention Submission Corp.*, 965 F.2d at 1090.

Consumer Financial Protection Bureau
1700 G Street NW
Washington, D.C. 20552
Phone: 202-435-7265
Fax: 202.435.7329
Email: Benjamin.Konop@cfpb.gov
        Kristina.Betts@cfpb.gov

Attorneys for Petitioner
Consumer Financial Protection Bureau

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2015, I caused the foregoing to be served via ECF upon all counsel of record, as follows:

    Allyson B. Baker
    Benjamin E. Horowitz
    Andrew T. Hernacki
    Venable LLP
    575 7th Street, N.W.
    Washington, DC 20004-1601
    Telephone: (202) 344-4000
    Facsimile: (202) 344-8300
    Email: abbaker@venable.com
    behorowitz@venable.com
    athernacki@venable.com

    s/Benjamin Konop
    BENJAMIN KONOP