UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Civil Case No. 15-1838 (RJL) |
| ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES AND SCHOOLS, | ) ) ) ) ) | |
| Respondent. | ) ) | |

**FILED**
APR 21 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANUM OPINION**
April 21, 2016 [Dkt. #1 ]

On October 29, 2015, the Consumer Financial Protection Bureau ("CFPB" or "petitioner") filed a petition in this Court, seeking an order requiring the Accrediting Council for Independent Colleges and Schools ("ACICS" or "respondent") to comply with a Civil Investigative Demand the CFPB issued to it on August 25, 2015. *See* Pet. to Enforce Civil Investigative Demand 1 [Dkt. #1] ("Pet."). Because the CFPB did not have authority to issue this Civil Investigative Demand, the petitioner's request is DENIED and this case is DISMISSED.

### BACKGROUND

On August 25, 2015, the CFPB issued to ACICS, an accreditor of for-profit colleges, a Civil Investigative Demand ("CID") with the stated purpose of "determin[ing] whether any entity or person has engaged or is engaging in unlawful acts and practices in

connection with accrediting for-profit colleges." Decl. of Benjamin Konop Ex. A at 5[1] [Dkt. #1-3] ("CID"). The CID required ACICS to designate a company representative to appear and give oral testimony regarding ACICS's policies, procedures, and practices relating to the accreditation of seven particular schools, and to respond to two interrogatories: (1) to identify all post-secondary educational institutions that ACICS has accredited since January 2010 and (2) to identify all individuals affiliated with ACICS who conducted any accreditation reviews since January 1, 2010 specific to twenty-one particular schools. *See* CID 6-7. According to the CFPB, this CID was issued following a CFPB investigation of "for-profit colleges for deceptive practices tied to their private student-lending activities." Mem. in Supp. of Petition to Enforce CID 5 [Dkt. #1-2] ("Pet'r's Mem.").

Following receipt of the CID, ACICS's counsel conferred with the CFPB several times by telephone to discuss compliance. Pet'r's Mem. 2. These discussions, however, did not resolve disagreements between ACICIS and the CFPB concerning ACICS's obligations, and on September 14, 2015, ACICS petitioned the CFPB to set aside or modify the CID. Pet'r's Mem. 2-3. The CFPB's Director denied the petition on October 8, 2015 and ordered ACICS to meet and confer with CFPB counsel. Pet'r's Mem. 3. Thereafter, ACICS's counsel continued to object to the CID, submitting to the CFPB a motion to reconsider its refusal to modify the CID on October 23, 2015 and a letter reiterating its arguments on October 26, 2015. Pet'r's Mem. 3. On October 27, 2015, the

---

[1] The Court refers to the page numbers assigned in the ECF caption for ease of reference.

CFPB indicated that it would not consider ACICS's motion for reconsideration because its regulations did not permit such motions. Pet'r's Mem. 3. Just two days later, the CFPB filed the instant petition for enforcement. *See* Pet. To date ACICS has not complied with the CID and opposes the CFPB's petition on the ground that it "concerns an investigation that is well outside the scope of the agency's authority." ACICS Opp'n to the CFPB's Pet. to Enforce CID 1 [Dkt. #4] ("Resp't's Opp'n"). For the following reasons, I agree.

## LEGAL STANDARD

In determining whether to enforce a CID, a court must consider (1) whether the agency has the authority to make the inquiry, (2) whether the information sought is reasonably relevant, and (3) whether the demand is not too indefinite. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977); *CFTC v. Ekasala*, 62 F. Supp. 3d 88, 93 (D.D.C. 2014). If these three requirements are met, a court should enforce the petition unless it is unduly burdensome. *See, e.g., Texaco*, 555 F.2d at 882. Although a court's role at this stage is "neither minor nor ministerial" it is "a strictly limited one," designed to further the "important governmental interest in the expeditious investigation of possible unlawful activity." *Id.* at 871-72. In short, the Court is not "to determine whether the [targeted entity's] activities [are] covered by the statute," but rather whether the information sought is relevant to an investigation for "a lawfully authorized purpose." *Id.* at 872 (discussing *Endicott Johnson v. Perkins*, 317 U.S. 501 (1943)). Moreover, agencies are generally accorded broad deference both in their interpretation of the scope of their authority and

3

their estimation of the relevance of requested records. *See FTC v. Ken Roberts Co.*, 276 F.3d 583, 586-87 (D.C. Cir. 2001) ("[W]e have held that enforcement of an agency's investigatory subpoena will be denied only when there is 'a patent lack of jurisdiction' in an agency to regulate or to investigate."); *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("We give the agency a wide berth as to relevance because it need establish only that the information is relevant to its investigation not to a hypothetical adjudication, and as we have explained, the boundary of an investigation need only, indeed can only, be defined in general terms."). Nevertheless, where it is clear that an agency either lacks the authority to investigate or is seeking information irrelevant to a lawful investigatory purpose, a court must set such inquiry aside. *See Morton Salt*, 338 U.S. at 652 ("[A] governmental investigation . . . may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power.").

## ANALYSIS

In the final analysis this case boils down to the answer to one question: Did the CFPB have the statutory authority to issue the CID in question? Unfortunately for the CFPB, the answer is no. How so?

The CFPB was established on July 21, 2010 by Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act, which tasked the CFPB with "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). As such, the CFPB is authorized, *inter alia*, to take action "to prevent a covered person or service provider from committing or

4

engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." *Id.* § 5531(a). To facilitate this purpose, the CFPB may issue CIDs to "any person [believed to] be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to a violation" of the federal consumer financial laws. *Id.* § 5562(c)(1). These CIDs must "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." *Id.* § 5562(c)(2).

Purportedly acting pursuant to this authority, the CFPB issued a CID to ACICS which contained the following statement of purpose:

> The purpose of this investigation is to determine whether any entity or person has engaged or is engaging in unlawful acts and practices *in connection with accrediting for-profit colleges*, in violation of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536, or any other Federal consumer financial protection law. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

CID 5 (emphasis added). ACICS argues that this language demonstrates the CFPB is attempting to conduct an investigation outside its statutory authority—that is, an investigation into the accreditation process of for-profit schools. Resp't's Opp'n 8.[2] As

---

[2] ACICS also spends much of its opposition discussing why it is not subject to the Consumer Financial Protection Act. Resp't's Opp'n 11-15. Heeding our Circuit Court's instructions, however, I must agree with petitioner that this preliminary stage it is not the appropriate forum to adjudicate whether ACICS's activities are covered by any consumer financial law. *See Texaco*, 555 F.2d at 872 (cautioning courts considering petitions to enforce administrate subpoenas that they are not consider the ultimate question of

5

previously discussed, the CFPB investigative authority is limited to inquiries to determine whether there has been a violation of any consumer financial laws. *See* 12 U.S.C. §§ 5561(1), (5). As respondent points out, and the CFPB does not deny, none of these laws address, regulate, or even tangentially implicate the accrediting process of for-profit colleges. Thus, at first blush, the CID's statement of purpose appears to concern a subject matter that is *not* within the statutory jurisdiction of the CFPB. *See Ken Roberts*, 276 F.3d at 586-87 (finding that a court asked to enforce a CID must ensure that "the subject matter of the investigation is within the statutory jurisdiction of the subpoena-issuing agency" (internal quotation marks omitted)).

Realizing the absence of a clear nexus between the consumer financial laws it is tasked with enforcing and its purported investigation into accreditation of for-profit schools, the CFPB argues that because it indisputably "has authority to investigate for-profit schools in relation to their lending and financial-advisory services," it also has authority to investigate whether any entity has engaged in any unlawful acts relating to the accreditation of those schools. Pet'r's Mem 4-5; Pet'r's Reply 1. Put simply, this post-hoc justification is a bridge too far! As ACICS has repeatedly and accurately explained, the accreditation process simply has no connection to a school's private student lending practices. Resp't's Opp'n 13. Moreover, ACICS is *not* involved in the financial aid decisions of the schools it accredits, which means that it plays no part in

---

"whether the [targeted entity's] activities [are] covered by the statute" at this preliminary stage). I have no doubt that if the CFPB pursues a case against ACICS in the future these significant threshold questions will be at the center of the litigation.

deciding whether to make or fund a student loan. *Id.* at 14. The CFPB objects that it "is not obligated to accept at face value ACICS's generalized description of its interaction with the schools it accredits, or what aspects of those schools' activities it 'touches,'" but rather it has the right to investigate and determine for itself whether these assertions are true.[3] Pet'r's Reply 5-6. Please. Although it may be that the CFPB is entitled to learn whether ACICS is connected in any way to potential violations of the consumer financial laws by the schools it accredits, the statement of purpose and the CFPB's actual requests belie any notion that its inquiry is limited in this way. Indeed, the statement of purpose says nothing about an investigation into the lending or financial-advisory practices of for-profit schools. Moreover, the CFPB's requests—for a list of *all schools* ACICS has accredited since 2010, for a list of *all individuals involved in the accreditation* of twenty-one enumerated schools, and for representatives to attest to the *overall approach* to accrediting seven enumerated schools—clearly reveal its investigation targets the accreditation process generally. This the CFPB was never empowered to do. *See Morton Salt*, 338 U.S. at 652. And the fact that the CFPB is also investigating for-profit schools

---

[3] Indeed, in its Notice of Supplemental Filing [Dkt. #12] ("Pet'r's Suppl."), the CFPB argues that ACICS's Accreditation Criteria suggest the opposite, noting provisions that seemingly require ACICS to ensure that "[a]ll institutionally financed loans [be] collected in accordance with sound and aggressive business practices for the collection of student loans" and that schools "avoid false, misleading, or exaggerated statements" about institutional loans offered. Pet'r's Suppl. 1-2. ACICS, however, reaffirmed that it "does not evaluate debt collection, and its activities are not connected to the provision of a financial service or product," and explained that while it confirms that the schools it accredits have policies in place to meet certain standards, it does not evaluate the content of those policies. ACICS's Resp. to the CFPB's Notice of Suppl. Filing 1-2 [Dkt. #13] ("Resp't's Suppl.").

for suspected violations of the consumer financial laws in connection with their lending and financial-advisory services does nothing to change this.[4]

## CONCLUSION

Although it is understandable that new agencies like the CFPB will struggle to establish the exact parameters of their authority, they must be especially prudent before choosing to plow head long into fields not clearly ceded to them by Congress. *See Texaco*, 555 F.2d at 874. Thus, having concluded that the CFPB lacks authority to investigate the process for accrediting for-profit schools, I am compelled to DENY its Petition to Enforce Civil Investigative Demand. A separate Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

---

[4] Even if the CFPB had put forward an investigatory purpose within the scope of its authority, for example, the lending practices of for-profit schools, the requested information may, nevertheless, be beyond reach as not reasonably relevant to that purpose. *See Texaco*, 555 F.2d at 874 ("[T]he relevance of the agency's subpoena requests may be measured only against the general purposes of the investigation."). As ACICS has aptly explained, the accreditation process does not touch the schools' lending or financial-advisory practices.